IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **07-cv-01475-JLK**

**DINE CITIZENS AGAINST RUINING OUR ENVIRONMENT,
SAN JUAN CITIZENS ALLIANCE**,

      Plaintiffs,

v.

**AL KLEIN, in his official capacity as Western Regional Director, Office of Surface
Mining Reclamation and Enforcement, Denver, Colorado,
OFFICE OF SURFACE MINING RECLAMATION AND ENFORCEMENT, a
federal agency within the U.S. Department of Interior**,

      Defendants,

**ARIZONA PUBLIC SERVICE and BHP NAVAJO COAL COMPANY,**

      Intervenors.

_____

**ORDER**
_____

Kane, J.

      Plaintiffs Diné C.A.R.E. and San Juan Citizens Alliance (collectively "Diné")

challenge the decision of the Office of Surface Mining and Reclamation ("OSM"), a

federal agency within the Department of the Interior, to renew and revise certain mining

permits held by intervenor BHP Navajo Coal Company ("BHP").  This matter is before

me on the cross-motions of BHP and Diné for a protective order concerning the use and

disclosure of two documents included in the administrative record for the OSM's

decision.  Having carefully considered the cross-motions and related filings, and all

applicable legal authorities, and being fully advised in the premises, I grant both motions

in part.

I

Diné alleges the OSM violated the National Environmental Policy Act and the

Administrative Procedures Act in various respects in the course of approving BHP's

application to renew and revise permits necessary to its operation of the Navajo Mine, a

large open-pit coal mine located on reserved tribal lands within the Navajo Nation in

northwestern New Mexico.  The parties agree that judicial review of the challenged OSM

decisions will be on the basis of the agency's administrative record for these decisions.

In February 2008, when OSM filed the administrative record with this court, it

moved that two of the documents in the record be received and maintained under seal, so

that they could not be accessed by the public.  These two documents are a 157-page

ethnographic study titled "Each Place Brings Stories: Navajo Mine, Area IV North

Cultural Resources Intensive Data Recovery Project, Navajo Ethnography Sub-Project"

and a 148-page "Data Recovery and Treatment Plan" (collectively "Ethnographic

Studies").  Both studies were prepared by BHP at OSM's direction and submitted to OSM

as part of BHP's application to revise its mine permit to expand operations into an area

known as Area IV North.  Both documents are subject to a 2007 Programmatic

Agreement between the OSM, BHP and the Navajo Nation Tribal Historic Preservation

Officer that is directed at identifying and managing the effect mine expansion will have

on historic properties in Area IV.  *See* Exs. in Support of Mot. to Seal (Doc. 59), Ex. C,

Att. 1.  Stipulation 10 of the Programmatic Agreement specifically limits the signatories'

distribution of "sensitive information about the locations and nature of inventoried

historic properties" as provided by the National Historic Preservation Act (NHPA),

16 U.S.C. § 470w-3, the Archeological Resource Protection Act (ARPA), 16 U.S.C.

§ 470hh, and implementing regulations,[1] and further requires the signatories "to

appropriately control the distribution of any confidential information they may receive as

a result of their participation in this Agreement."  *Id.* at 5.

In its motion to seal, the OSM argued that the Ethnographic Studies contain

information that is made confidential by the cited statutes, and, as a result, that the Studies

should be maintained under seal in their entirety "unless and until [the court] makes an

independent determination of whether less protection exists for [them]."  Defs.' Mot. to

File Portions of Admin. Record Under Seal (Doc. 51) ¶ 8.  BHP filed a response

supporting OSM's motion to seal and also proposing that the court enter a protective

order placing restrictions on other parties' use and distribution of the Ethnographic

Studies.  Diné opposed OSM's motion to seal and BHP's proposal for a protective order

in part, arguing the first was too broad in seeking to seal the documents in their entirety

and the second too narrow because it did not apply to all parties.

---

[1]     These authorities essentially allow a federal agency to withhold information
about historic or archeological sites from the public in some circumstances.  *See*
16 U.S.C. §§ 470hh, 470w-3; 36 C.F.R. § 800.11.

To preserve the status quo, I granted the OSM's motion to seal the Ethnographic

Studies but did not address the protection to which the documents were entitled under the

NHPA or ARPA or rule on BHP's proposed protective order.  Instead, I directed the

parties to confer regarding the status of the Studies and BHP's proposed order and to

inform the court of the results of their efforts.

After conferring and failing to reach agreement, BHP and Plaintiffs filed cross

motions for a protective order concerning the Ethnographic Studies.  As I read them, their

motions presented two issues for decision:  (1) whether all or part of the Ethnographic

Studies were agency records subject to public disclosure under the standards established

by the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552, including its

exemption for documents protected from public disclosure by other statutes;[2] and (2) what

restrictions, if any, should be imposed on the parties' use and disclosure of any part of the

Studies that were not subject to public disclosure under FOIA.

---

[2]     BHP originally argued that FOIA was irrelevant to the issues presented
because, in general, FOIA does not set the standard for issuance of a protective order
under Rule 26(c) of the Federal Rules of Civil Procedure.  Rule 26(c) does not, however,
supercede Congress' express directions in FOIA regarding the public's right of access to
federal agency records that do not fall within certain statutory exemptions.  All agree that
the Ethnographic Studies, as part of the administrative record for OSM's permitting
decisions, are federal agency records.  As such, the public's right to access all or some of
these records, and the OSM's right to withhold all or portions of them from the public, is
necessarily measured by the standards stated in FOIA.  I know of no reason why the
public's right of access to the Ethnographic Studies would be different here simply
because the vehicle for their potential public disclosure is this litigation rather than a
FOIA request.

Near the close of briefing on the cross-motions, the OSM informed the court that it

had received a FOIA request for the Ethnographic Studies from a non-party to this

action.[3]  It also informed me it was attempting to reach agreement with the NNHPD on a

redacted version of the Ethnographic Studies that could be publically released.  OSM

stated it would notify the court when and if agreement was reached.

II.

On October 31, 2008, the OSM released what it now describes as "substantially all

of the requested materials" in response to the FOIA request.  Def.'s Resp. to Court's

July 1, 2009 Order (Doc. 90) 2.  OSM redacted the Studies as released to withhold

information pursuant to FOIA Exemption 3, which prevents disclosure of information

"exempted from disclosure by statute," and FOIA Exemption 6, which permits the federal

government to withhold information about individuals when the disclosure of such

information "would constitute a clearly unwarranted invasion of personal privacy." *See*

Letter & Encl. B from Howard E. Strand, OSM FOIA Coordinator for Western Region, to

Patty Henetz, Salt Lake Tribune, dated Oct. 31, 2008 (internal quotation omitted) (Ex. A

to Def.'s Resp. to Court's July 1, 2009 Order (Doc. 90-2)).  Specifically, OSM redacted

and withheld what it describes as "sensitive information about the location, character or

ownership of historic properties and properties eligible as historic properties" protected

from disclosure by section 304 of the NHPA, "confidential information about

---

[3]      OSM states that the request was filed by a newspaper reporter on March 24, 2008, and assigned the FOIA Request No. OSM 2008-00025.

archeological resources" exempt from disclosure under section 9(a) of the ARPA, and

"personal information, the disclosure of which would constitute a clearly unwarranted

invasion of personal privacy." *Id*. at 3.  OSM reports that the FOIA requester did not

appeal the agency's decision to withhold portions of the Ethnographic Studies.  OSM also

reports that it consulted with the Navajo Nation Historic Preservation Department

(NNHPD) to identify the portions of the Ethnographic Studies to be withheld under the

cited authorities and that the NNHPD approved the redactions.

Following an inquiry by the Court, the OSM recently informed the court and Diné

of this resolution of the FOIA request and provided Diné with a copy of the Ethnographic

Studies as redacted and released pursuant to FOIA.  In light of these developments, both

the OSM and BHP have also proposed that the redacted, FOIA-released versions of the

Studies be placed in the publically-available Administrative Record filed in this action.

Diné has not objected to this proposal or to the redactions made to the FOIA-released

version of the Ethnographic Studies.

### III.

As a result of these developments, one of the issues initially presented by the

pending cross-motions has been resolved, as all of the interested parties now agree that a

significant portion of the Ethnographic Studies are agency records subject to public

disclosure under FOIA.  The parties initially requesting that the Ethnographic Studies in

their entirety be sealed, the OSM and BHP, have further acknowledged that the redacted

version of the Studies released in response to the FOIA request can and should be

included in the publically-available Administrative Record filed in this action.

Accordingly, OSM shall file with the court copies of the redacted versions of the

Ethnographic Studies to be included in the public docket for this case.  The unredacted

versions of these documents shall remain sealed.

This leaves the question of what use, if any, the parties to this action should be

permitted to make of the unredacted, sealed versions of the Ethnographic Studies.  All of

the interested parties[4] agree that a protective order should be entered determining this

issue.  BHP proposes the protective order prohibit the parties' use of information redacted

and withheld from the Studies for any purpose other than this litigation, and that it bar

disclosure of this information to anyone who has not signed an affidavit affirming that

they will abide by this prohibition and keep the withheld information confidential.  BHP's

Resp. to Court's July 1, 2009 Order (Doc. 92), Proposed Order ¶¶ 2-5.  Diné apparently

agrees with this proposal, but objects to BHP's further request that the order provide these

and related restrictions on the use of this confidential information not prevent BHP or the

OSM "from using or retaining the Confidential Information to the extent they obtained

the Confidential Information independently of this litigation."  *Id.* ¶ 16.

Diné objects to BHP having the benefit of this provision.  The exact basis of

Diné's objection is not clear, but appears to be the notion that it is inherently unfair for

BHP to have an unfettered right to use and disclose the sealed, unredacted Studies when

---

    4      Intervenor Arizona Public Service has not taken a position on the parties'
cross-motions for a protective order.

Diné is not accorded the same right.  I am not persuaded this is the case for several

reasons.  First, BHP created the Ethnographic Studies and thus had possession and use of

them independent of this litigation.  Absent this suit, Diné would not have any right of

access to the FOIA-exempt portions of these Studies.  It is entirely reasonable, therefore,

that Diné's use and disclosure of the confidential portions of the Studies be limited while

BHP's is not.  Diné's argument also ignores that BHP's use and disclosure of the

Ethnographic Studies is limited by the confidentiality provisions of the Programmatic

Agreement into which it entered with OSM and NNHPD.  Thus, BHP's right to distribute

the unredacted version of the Ethnographic Studies is not unfettered.  Finally, Diné has

not demonstrated it would be prejudiced in this action or more generally if BHP is

allowed to use the Ethnographic Studies it created consistent with the terms of the

Programmatic Agreement.

For the reasons stated above, I grant BHP's motion (Doc. 75) in part and grant

Diné's cross-motion (Doc. 79) in part, as described above.  I will enter BHP's proposed

Order Concerning Administrative Record and Protective Order, attached to its July 21

Response (Doc. 92), by separate order, subject to the following revisions:

1.     Paragraph 2 will be modified to clarify that the "Confidential Information"

protected by the order is the information redacted and withheld by OSM in

response to the FOIA request; and

2.     Paragraph 16 of the Protective Order will be modified to state that the

Protective Order does not "prohibit the Federal Defendants or BHP from

using or retaining the Confidential Information to the extent they obtained

the Confidential Information independently of this litigation, *provided such*

*use and retention is consistent with the provisions of the*

*2007 Programmatic Agreement (attached to the Declaration of Foster*

*Kirby (Doc. 59-4)) and any other applicable law.*" (New text in italics.)

IT IS SO ORDERED.

Dated this 3d day of August, 2009.

           **s/ John L. Kane**
           SENIOR U.S. DISTRICT JUDGE