IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **07-cv-01475-JLK**

**DINE CITIZENS AGAINST RUINING OUR ENVIRONMENT,**
**SAN JUAN CITIZENS ALLIANCE**,

      Plaintiffs,

v.

**AL KLEIN, in his official capacity as Western Regional Director, Office of Surface Mining**
**Reclamation and Enforcement, Denver, Colorado,**
**OFFICE OF SURFACE MINING RECLAMATION AND ENFORCEMENT, a federal**
**agency within the U.S. Department of Interior**,

      Defendants,

**ARIZONA PUBLIC SERVICE COMPANY and BHP NAVAJO COAL COMPANY,**

      Intervenors.

---

**ORDER ON MOTIONS TO DISMISS**

Kane, J.

This action concerns alleged violations of the National Environmental Protection Act

("NEPA"), 42 U.S.C. § 4321 *et seq.*, and the Administrative Procedures Act ("APA"),

5 U.S.C. § 701 *et seq.*, by the Department of Interior's Office of Surface Mining Reclamation

and Enforcement ("OSM") in connection with OSM's permitting of mining and related

operations at the Navajo Mine.  It is before me on the motion to dismiss or to transfer venue filed

by OSM and Al Klein, its Western Regional Director, (collectively "Federal Defendants") and

separate motions to dismiss filed by intervenors Arizona Public Service Company ("APS") and

BHP Navajo Coal Company ("BHP").  Having carefully considered the motions, related

briefing, and all applicable legal authorities, and being fully advised in the premises, I deny the motions in part and grant them in part.

Background

Intervenor BHP operates the Navajo Mine, a large open pit coal mine operation, on reserved tribal lands in northwestern New Mexico pursuant to a long-standing lease with the Navajo Nation ("Tribe").  OSM has permitting and other authority over BHP's mine operations pursuant to the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. § 1201 *et seq.*  Intervenor APS operates the Four Corners Power Plant, which is supplied with coal from the Navajo Mine.

In September 2004, OSM's Western Regional office in Denver approved BHP's application to renew its existing permit to conduct mining and related operations at the Navajo Mine.  OSM did not conduct a NEPA analysis of the environmental impacts of its 2004 permit renewal decision based on its determination, reported in its September 2004 Permit Renewal Decision Document, that the permit renewal was categorically exempt from NEPA review. Operations permitted by OSM through the 2004 renewal include the permanent disposal of fly ash, scrubber sludge, bottom ash and other solid waste, referred to as "Coal Combustion Waste" or "CCW," from APS's Four Corners Power Plant in mined out coal pits in the permit area.  The area subject to the 2004 mine permit renewal is approximately 13,430 acres.  The permit renewal approves BHP's Navajo Mine operations through September 2009.

In December 2004, BHP submitted an additional permit application to OSM in which it requested a revision to its Navajo Mine permit to allow it to expand mining operations into a

3,800 acre area known as "Area IV North."  The application included a request to relocate a public road, the Burnham Road, to facilitate mining activities in this area.

OSM's Western Regional office in Denver approved BHP's permit revision application on October 7, 2005.  OSM's Decision Document included a Finding of No Significant Impact ("FONSI"), in which the agency reported its conclusion that the proposed expansion of the mine into Area IV North would not have an impact on the quality of the human environment and thus that an Environmental Impact Statement ("EIS") was not required under NEPA.  This FONSI determination was based on a 14-page Environmental Assessment ("EA") that was also included in the Decision Document.

OSM imposed two conditions of relevance in its 2005 decision approving the requested permit revision.  One was that BHP complete a thorough ethnographic study of Area IV North and develop, approve and implement mitigation/data recovery plans for the area, before causing any disturbance there.  Plaintiffs allege this study and mitigation plan (collectively "Ethnographic Studies") have been completed.  The second 2005 permit condition required BHP to follow OSM's regulatory procedures for relocating a public road before any disturbance of the existing Burnham Road.

In addition, Plaintiffs allege OSM has required that a Cumulative Hydrologic Impacts Analysis ("CHIA") be performed with respect to Area IV North or the Navajo Mine as a whole.  This study would reportedly evaluate the cumulative impacts of continued mining in these areas on affected surface and ground waters.

On July 13, 2007, Plaintiffs Diné Citizens Against Ruining Our Environment and San Juan Citizen Alliance filed this action.  Plaintiffs initially asserted five claims alleging the

3

Federal Defendants violated NEPA and the APA by issuing the 2004 mine permit renewal and 2005 mine permit revision without complying with certain NEPA environmental review requirements or satisfying NEPA's public notice and participation requirements.  In their First Amended Complaint, Plaintiffs added two new claims alleging the Federal Defendants violated both Acts by failing to supplement or otherwise include in their mine-related NEPA analyses the Area IV North Ethnographic Studies, the Burnham Road relocation proposal and the CHIA.

As relief for their claims, Plaintiffs seek declaratory judgment that the Federal Defendants violated NEPA and the APA in issuing the 2005 permit revision and 2004 permit renewal, in failing to supplement the NEPA analyses relating to these decisions, and by engaging in a continuing pattern and practice of violating NEPA's public notice requirements in taking federal action regarding the Navajo Mine.  Plaintiffs also seek to enjoin implementation of the 2005 permit revision regarding mining in Area IV North until such time as OSM has complied with NEPA.  With respect to the 2004 permit renewal, Plaintiffs seek to enjoin any action that authorizes disposal of CCW in the mine permit area, the relocation of Navajo Nation tribal members or blasting operations near tribal member residences until compliance with NEPA is achieved.  Plaintiffs do not seek to enjoin operation of the Navajo Mine.

Plaintiffs further request an order requiring the Federal Defendants to provide specified public notice and involvement under NEPA for permitting actions regarding the Navajo Mine, including advance public notice of proposed agency actions and publication of such notices in tribal and non-tribal periodicals in both English and the Navajo language.  Finally, Plaintiffs request that I order Defendants to develop an EIS for the Navajo Mine in its entirety, including the Area IV North expansion.

In separate motions, the Federal Defendants and Intervenors argue all or some of Plaintiffs' claims must be dismissed because: the court lacks subject matter jurisdiction to decide them; the claims regarding OSM's 2004 and 2005 permitting decisions are barred by Plaintiffs' failure to exhaust administrative remedies, the doctrine of laches and/or the applicable the statute of limitations; Plaintiffs' claims seeking supplementation of OSM's NEPA analyses are premature; the Navajo Nation, allegedly an indispensable party to this action, cannot be joined; and venue in this court is improper.  Each asserted ground for dismissal is examined below.

<u>Discussion</u>

I.      Jurisdictional Challenge

The Federal Defendants and Intervenors initially challenge this court's subject matter jurisdiction to decide Plaintiffs' claims that OSM violated NEPA and the APA in connection with its 2004 and 2005 permitting decisions.

One foundation of this jurisdictional challenge is that Plaintiffs were required to assert their NEPA claims under SMCRA, rather than the APA.  Because NEPA does not provide a private cause of action, however, Plaintiffs claims are properly asserted pursuant to the APA. *See Colorado Farm Bureau Fed'n v. United States Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000).  Defendants/Intervenors' argument that the APA has no application here because SMCRA provides an avenue for judicial review of OSM's permitting decisions conflicts with the plain language of the APA, which provides that both "*agency action made reviewable by statute* and final agency action for which there is no other adequate remedy in court" are subject to judicial review under the APA.  5 U.S.C. § 704 (emphasis added); *see Ohio River Valley Envtl. Coalition, Inc. v. Kempthorne*, 473 F.3d 94, 100-101 (4th Cir. 2006); *see also Sierra Club v.*

5

*Slater*, 120 F.3d 623, 631 (6th Cir. 1997) (noting many courts recognize NEPA challenges are

properly asserted under APA).  In addition, neither Defendants nor Intervernors identify any

provision in SMCRA that expressly supercedes or preempts review of OSM's NEPA compliance

under the APA.  That judicial review of OSM's permitting decisions is available under SMCRA

does not, therefore, bar review under the APA of OSM's NEPA compliance in rendering these

decisions.  *Ohio River Valley*, 473 F.3d at 100-101 (rejecting proposition that availability of

review under SMCRA bars APA review); *see also Save Our Cumberland Mts. v. Norton*,

297 F. Supp. 2d 1042, 1047 n.2 (E.D. Tenn. 2003) (distinguishing between SMCRA and its

remedies and suit seeking recovery under NEPA).

　　　　The Federal Defendants assert that even if Plaintiffs properly asserted their NEPA claims

under the APA, subject matter jurisdiction is still lacking because the Supreme Court has held

the APA does not provide an independent grant of jurisdiction to review agency action.  *See*

*Califano v. Sanders*, 430 U.S. 99, 107 (1977).  This is quite true, but in the same decision in

which the Supreme Court decided this question, it also held that federal question jurisdiction

under 28 U.S.C. § 1331 extends to APA claims unless Congress has specifically precluded

judicial review of the particular agency action that is the subject of the APA claim.[1]  *See id.*

at 105; *Chrysler Corp. v. Brown*, 441 U.S. 281, 317 n.47 (1979) ("Jurisdiction to review agency

action under the APA is found in 28 U.S.C. § 1331"); *Greater Yellowstone Coalition v. Tidwell*,

572 F.3d 1115, 1120 (10th Cir. 2009); *Wilder v. Prokop*, 846 F.2d 613, 618 (10th Cir. 1988);

*Robbins v. Reagan*, 780 F.2d 37, 42 (D.C. Cir. 1985).  Accordingly, unless Congress has

---

[1]　　　　28 U.S.C. § 1331 provides district courts with original jurisdiction of "all civil
actions arising under the Constitution, laws, or treaties of the United States."

expressly precluded judicial review of the OSM decisions at issue here, federal question

jurisdiction exists for the federal courts to decide Plaintiffs' claims that the OSM violated NEPA

in the course of reaching these decisions.

The Federal Defendants and Intervenors have not identified any statute in which

Congress expressly precludes judicial review of OSM permitting decisions.  Instead, they

contend subject matter jurisdiction does not exist because Congress demonstrated its intent to

preclude judicial review of OSM decisions by persons or entities that did not participate in and

exhaust administrative remedies before bringing suit.  The statutory bases for this argument are

section 1264(c) of SMCRA, which provides that any person "may request" a hearing on an OSM

permitting decision, and section 1264(f), which provides, as relevant here:  "Any applicant or

any person with an interest which is or may be adversely affected who has participated in the

administrative proceedings as an objector, and who is aggrieved by the decision of the regulatory

authority, . . . shall have the right to appeal in accordance with section 1276 of this title

[governing judicial review under SMCRA]."  30 U.S.C. § 1264(c), (f); *see* 30 U.S.C. § 1276.

Because it is undisputed that Plaintiffs did not participate in the procedures available under

SMCRA to appeal OSM's 2004 and 2005 permitting decisions, these parties argue the federal

courts lack subject matter jurisdiction to consider Plaintiffs' APA and NEPA-based challenges to

these decisions.

Even if the relevant SMCRA provisions make administrative exhaustion a precondition

to judicial review, this requirement is not jurisdictional.[2]  Absent "sweeping and direct statutory

---

[2]    The Supreme Court has noted that courts and litigants often "confuse[] or
conflate[]" two distinct concepts: federal court subject matter jurisdiction over a controversy and
the essential ingredients of a federal claim for relief, *i.e.*, "the substantive adequacy" of the claim

language indicating that there is no federal jurisdiction prior to exhaustion," I must assume that a

statutory exhaustion requirement is nonjurisdictional. *Munsell v. Dep't of Agriculture*,

509 F.3d 572, 579-80 (D.C. Cir. 2007) (internal quotation omitted); *see Forest Guardians v.

United States Forest Serv.*, __ F.3d __, 2009 WL 2915022 (10th Cir. 2009) (to determine whether

statutory exhaustion requirement is jurisdictional "we look for sweeping and direct statutory

language that goes beyond a requirement that only exhausted actions be brought'" internal

quotation omitted); *see also Weinberger v. Salfi*, 422 U.S. 749, 757 (1975) (finding statutory

exhaustion requirement jurisdictional because statutory language was "sweeping and direct and

[] states that no action shall be brought under § 1331, not merely that only those actions shall be

brought in which administrative remedies have been exhausted."). The statutory provisions

relied upon by the Federal Defendants and Intervenors to support a SMCRA-derived exhaustion

requirement contain no such language. *Cf. Woodford v. Ngo*, 548 U.S. 81, 1010 (2006) (finding

statutory exhaustion provision far more direct than the SMCRA provisions at issue here to be

nonjurisdictional); *Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 603-06 (5th Cir.

2007) (same).[3]  Accordingly, the Federal Defendants/Intervenors' exhaustion arguments are an

---

under the relevant statute. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 503 (2006); *see Munsell v.
Dep't of Agriculture*, 509 F.3d 572, 580 (D.C. Cir. 2007); 2 J. Moore *et al.*, Moore's Fed.
Practice § 12.30[1], at 12-36.1 (3d ed. 2005). Not every statutorily-prescribed ingredient or
requirement for a federal claim is jurisdictional. *Arbaugh*, 546 U.S. at 511; *Munsell*, 509 F.3d
at 580. "If the Legislature clearly states that a threshold limitation on a statute's scope shall
count as jurisdictional, then courts and litigants will be duly instructed and will not be left to
wrestle with the issue. . . . But when Congress does not rank a statutory limitation on coverage as
jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh*,
546 U.S. at 515-16.

[3]     Contrary to APS' suggestion, *Coal Corporation Operating Co. v. Hodel*,
876 F.2d 860 (10th Cir. 1989), has no bearing on this determination as it addressed a separate
issue, whether SMCRA's time limit for seeking judicial review of a SMCRA-authorized

affirmative defense to Plaintiffs' claims, *see Jones v. Bock*, 549 U.S. 199, 212 (2007) ("usual practice under Federal Rules is to regard exhaustion as an affirmative defense"); *Forest Guardians*, ___ F.3d at ___, 2009 WL 2915022 at *4 (same), and its motion seeking dismissal based on these requirements is a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).  *See Jones*, 549 U.S. at 215; *Pollinger v. United States*, 539 F. Supp. 2d 242, 258 (D.D.C. 2008).

In light of this determination and the existence of federal question jurisdiction over this APA action as described above, the Defendant/Intervenors' motions to dismiss for lack of subject matter jurisdiction are denied.

II.      Exhaustion Requirements for Plaintiffs' First through Fifth Claims

Consideration of the Federal Defendants' and Intervenors' exhaustion defense begins not with SMCRA but with the exhaustion of administrative remedies doctrine and its relationship to claims brought under the APA.  The exhaustion doctrine is a judicially created, prudential doctrine that requires a person or entity seeking to challenge an agency decision to present its complaints initially to the agency and to exhaust all administrative remedies available to it before seeking judicial review.  *See McKart v. United States*, 395 U.S. 185, 193 (1969).  Failure to meet these requirements can preclude or limit judicial review of the agency decision.  *See id.*  The doctrine's primary purpose is to allow government agencies to develop the necessary factual background and to apply their expertise to the issues of concern so that when the administrative proceeding does come before a court, the court "will have before it the mature, considered, and

---

rule-making or decision regarding a state or federal SMCRA program, is jurisdictional.  *Id.* (commenting on SMCRA § 1276(a)(1)).

final articulation of the basis of the agency's action." *Glisson v. Unites States Forest Serv.*, 55 F.3d 1325, 1327 (7th Cir. 1995); *McKart*, 395 U.S. at 194-95; *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 550 (10th Cir. 2001).  Requiring completion of the administrative process before suit also serves judicial efficiency, as the complaining party may prevail in that process and thus avoid the need for court intervention.  *McKart*, 395 U.S. at 195; *Shawnee*, 253 F.3d at 550.  The exhaustion doctrine is subject to numerous exceptions, and its application in a specific case requires consideration of the purposes of the doctrine and the particular administrative scheme involved.  *McKart*, 395 U.S. at 193; *Glisson*, 55 F.3d at 1327; *see Shawnee*, 253 F.3d at 549-51.

Congress had codified the judicially developed doctrine and how it applies in actions brought pursuant to some statutes governing judicial review of government decision-making.  In *Darby v. Cisneros*, 509 U.S. 137 (1993), the Supreme Court confirmed that the APA is one such statute.  *See id.* at 153.  The issue presented to the court in *Darby* was whether section 10(c) of the APA, 5 U.S.C. § 704, by providing the conditions under which an agency action becomes final for purposes of judicial review under the statute, limits the authority of courts to impose additional exhaustion requirements as a prerequisite to judicial review.[4]  *Darby*, 509 U.S. at 145.

---

[4]        Section 10(c), titled "Actions reviewable," provides as relevant here:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. . . . Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704.

10

The Court held Congress intended section 10(c) to have just this effect, so that "where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* [1] when expressly required by statute or [2] when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Id.* at 154 (emphasis in original). Otherwise, the Court stated in *Darby*, "[c]ourts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become 'final' under § 10(c)." *Id.* at 154; *see Hanson v. Wyatt*, 552 F.3d 1148, 1156 (10th Cir. 2008) (recognizing "an agency decision can sometimes be final for purposes of the APA despite the failure to exhaust administrative remedies").

There is no dispute in this case that OSM's 2004 and 2005 permitting decisions and related NEPA determinations are final agency actions under APA § 10(c). Accordingly, under *Darby*, I must consider both of the potentially relevant statutes here, SMCRA and NEPA, and their implementing regulations to determine if either meet *Darby*'s standard for applying administrative exhaustion requirements to Plaintiffs' APA claims. As it is clear that NEPA and its implementing regulations do not do so,[5] I return to consideration of SMCRA § 1264 and relevant regulations under the *Darby* standard.

Statutory exhaustion provisions generally state "that a judicial remedy may not be sought or obtained unless, until, or before certain other remedies are exhausted." *See Woodford v. Ngo*, 548 U.S. 81, 102 (2006). Both SMCRA § 1264 and OSM's regulations regarding administrative and judicial review of OSM decisions state only that any person with an interest that is or may be

---

[5]     *See Sierra Club v. Bosworth*, 352 F. Supp. 2d 909, 926 (D. Minn. 2005); *Sierra Nevada Forest Protection Campaign v. United States Forest Serv.*, No. Civ. S042023MCEGGH, 2005 WL 1366507, * 11 (May 26, 2005 E.D. Cal. 2005).

adversely affected by the decision "may" request an administrative hearing, 30 U.S.C. § 1264(c); 30 C.F.R. § 775.11(a), and, that any person "who has participated in the administrative proceedings as an objector" "shall have the right to appeal," 30 U.S.C. § 1264(f), or "may appeal" the decision to the appropriate court, 30 C.F.R. § 775.13; *see* 30 C.F.R. § 774.15(f) ("Any person having an interest which is or may be adversely affected by the decision of the regulatory authority [regarding permit renewals] shall have the right to administrative and judicial review set forth in Part 775 of this chapter.").  Although I recognize there is room for disagreement on the issue, I find this statutory and regulatory language falls well short of expressly requiring an administrative appeal as a prerequisite to judicial review as required by APA § 10(c) and *Darby*.  *See Arch Mineral Corp. v. Babbitt*, 894 F. Supp. 974, 985 (S.D.W.Va. 1995) (holding neither SMCRA nor implementing regulations providing a person "may" appeal or "may" file a request for administrative review expressly require exhaustion of administration remedies under *Darby* standard); *Wilderness Workshop v. United States Bureau of Land Mgmt.*, Civ. No. 08-cv-00462-REB, 2008 WL 1897997, *2 (D. Colo. Apr. 28, 2008) ("may appeal" language in agency regulation does not impose requirement that administrative remedies be exhausted under *Darby*); *San Juan Citizens' Alliance v. Babbitt*, 228 F. Supp. 1224, 1232-33 (D. Colo. 2002) (same); *Darby*, 509 U.S. at 142, 144 (citing with approval appellate court's conclusion that the defendant agency's administrative review regulations, which provided that a party "may" request administrative review, did not expressly mandate exhaustion of administrative remedies prior to filing suit).[6]  Accordingly, applying *Darby* and its standards for

---

[6]     For an example of the type of language courts have found expressly mandates exhaustion of administrative remedies as required to impose this requirement on APA claims, see 7 USC § 6912(e), which provides:  "Notwithstanding any other provision of law, a person

determining when statutory or regulatory exhaustion requirements are a prerequisite to judicial review in an APA case, Plaintiffs' failure to administratively appeal the OSM decisions at issue here does not preclude them from maintaining this action.[7]

Plaintiffs assert this is the end of the analysis regarding exhaustion of administrative remedies and this action. The Federal Defendants and Intervenors, however, point to another line of authority, headed by the Supreme Court's more recent decision in *Department of Transportation v. Public Citizen*, 541 U.S. 752 (2004), as support for the proposition that dismissal is required as a result of Plaintiffs' failure to participate in OSM's administrative process.

---

shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against--(1) the Secretary [of Agriculture]; (2) the Department [of Agriculture]; or (3) an agency, office, officer, or employee of the Department." *See Colorado Off-Highway Vehicle Coalition v. United States*, 505 F. Supp. 2d 808, 816 (D. Colo. 2007).

[7]        The Federal Defendants argue two cases, *Southern Ohio Coal Co. v. Office of Surface Mining*, 20 F.3d 1418 (6th Cir. 1994), and *Mullins Coal Co. v. Clark*, 759 F.2d 1142 (4th Cir. 1985), establish that SMCRA requires exhaustion of administrative remedies as a prerequisite to judicial review of all OSM decisions. Both cases, however, address judicial review of OSM enforcement and cessation of operation orders that are subject to an entirely separate and elaborate administrative review and appeal process, set out in 30 U.S.C. § 1275, that was carefully crafted by Congress to apply to these particular OSM orders. *See S. Ohio*, 20 F.3d at 1422-23; *Mullins*, 759 F.2d at 1145-46. These administrative review requirements do not apply to OSM permitting decisions. In addition, both *Southern Ohio* and *Mullins* arose solely under SMCRA, and thus did not involve consideration of APA § 10(c) or *Darby*'s standard for determining whether exhaustion requirements may be imposed on claims properly asserted under the APA. The Federal Defendants' contention that SMCRA expressly mandates exhaustion of administrative remedies for all claims challenging OSM decisions is also belied by other authority. *See, e.g.*, *Coteau Properties Co. v. Dep't of Interior*, 53 F.3d 1466, 1471-72 (8th Cir. 1995) (rejecting administrative exhaustion challenge to APA claim concerning OSM decision because SMCRA did not specifically mandate exhaustion of available administrative remedies); *Arch Mineral Corp. v. Babbitt*, 894 F. Supp. at 985 (same); *Bragg v. Robertson*, No. Civ. A. 2:98-0636, 1998 WL 1781736, *5 (S.D.W. Va. Oct. 9, 1998) (SMCRA citizen suits not subject to exhaustion requirements).

In *DOT*, the Supreme Court considered whether NEPA and the federal Clean Air Act required the relevant federal agency to evaluate the environmental effects of cross-border operations of Mexican-domiciled motor carriers in promulgating regulations that would allow such operations. 541 U.S. at 756. The Court ultimately held the federal agency was not required to conduct this review because it lacked discretion to prevent these cross-border operations. *Id.* Before reaching this decision, the Court considered whether certain of the respondents' challenges to the federal agency's NEPA compliance were properly before it. *Id.* at 764. The Court held they were not because the respondents had forfeited the right to raise these particular objections in court by not presenting them to the federal agency before bringing suit. *Id.* The rationale for this conclusion was the traditional prudential justification for judicially imposed exhaustion requirements: "Persons challenging an agency's compliance with NEPA must structure their participation so that it alerts the agency to the parties' position and contentions, in order to allow the agency to give the issue meaningful consideration." *Id.* (internal quotation omitted).

The rule declared in *DOT* is generally termed "issue exhaustion" and is so closely related to the doctrine of exhaustion of administrative remedies that it is viewed as part of that doctrine. *See* 33 Charles A. Wright & Charles H. Koch, Federal Practice and Procedure: Judicial Review § 8398 at 402 (2006). The relationship between the two concepts becomes even closer if the Supreme Court's statements in *DOT* about forfeiture of unexhausted claims is employed, as the Federal Defendants urge, to bar suit entirely when a plaintiff has not participated in the administrative review and appeal process. Accordingly, it is difficult to reconcile the Supreme Court's broad statements in *DOT* regarding the necessity of raising objections under NEPA in

14

the administrative arena before filing suit with the Court's earlier direction in *Darby* that

"[c]ourts are not free to impose an exhaustion requirement as a rule of judicial administration" to

NEPA and other claims brought under the APA when the agency action at issue is "final" under

APA § 10(c).  *Darby*, 509 U.S. at 154.

Neither the Tenth Circuit nor any other court as far as I have been able to determine has

examined this issue.[8]  The Tenth Circuit has invoked *DOT* and its "issue exhaustion"

requirements on several occasions to impose these requirements on APA claims alleging NEPA

violations, *see Forest Guardians v. United States Forest Serv.*, ___ F.3d ___, 2009 WL 2915022,

*4-5 (Aug. 26, 2009); *Forest Guardians v. United States Forest Serv.*, 495 F.3d 1162, 1170

(10th Cir. 2007); *Silverton Snowmobile Club v. United States Forest Serv.*, 433 F.3d 772, 779,

783 (10th Cir. 2006), but in each case exhaustion of administrative remedies was expressly

mandated by the defendant agency's enabling statute.  *See* 7 U.S.C. § 6912(e) (stating that "a

person shall exhaust all administrative appeal procedures established by the Secretary or

required by law before the person may bring an action" against an agency of the Department of

Agriculture).  Thus, although the Tenth Circuit did not consider *Darby* and its requirements for

imposing exhaustion requirements on decisions deemed final under APA § 10(c), its decisions in

these cases are consistent with this authority.

Such is not the case here.  Requiring Plaintiffs to forfeit their NEPA claims because they

did not raise them in comments or an appeal to OSM as required by *DOT* conflicts with the

conclusion, stated above, that exhaustion of administrative remedies before the OSM is not a

---

[8]       I note that none of the parties in this action attempted to reconcile these lines of
authority, but rather just ignored the Supreme Court authority, whether it was *Darby* or *DOT*,
that did not advance its position on exhaustion.

prerequisite to judicial review under *Darby* and APA § 10(c). It is not my role to resolve this conflict, however. Instead, I am bound to follow *DOT* and apply its exhaustion doctrine to Plaintiffs' NEPA claims here.

*DOT*'s judicially-imposed exhaustion requirements for NEPA claims are prudential and hence not jurisdictional. *See Forest Guardians*, ___ F.3d at ___, 2009 WL 2915022, at *4 (judicially created exhaustion doctrines are prudential in nature). As such, compliance with these requirements may be excused in some circumstances.[9] *See id.*, at *5; *McKart*, 395 U.S. at 193; *Munsell*, 509 F.3d at 579-80. These circumstances include when the plaintiff was not properly notified of the administrative remedies available to it and/or was not provided a meaningful opportunity to participate in the administrative process. *See Ecology Center of Louisiana, Inc. v. Coleman*, 515 F.2d 860, 864 (5th Cir. 1975) (cited with approval in *Jette v. Bergland*, 579 F.2d 59, 62 (10th Cir. 1978), overruled on other grounds by *Village of Los Ranchos v. Marsh*, 956 F.2d 970 (1992)); *Lands Council v. Vaught*, 198 F. Supp. 2d 1211, 1241 (E.D. Wash. 2002); *Greenspoon v. Fed. Highway Admin.*, 488 F. Supp. 1374, 1377-78 (D. Md. 1980).

In their Fourth Claim for Relief, Plaintiffs allege OSM has an ongoing pattern and practice of violating NEPA and NEPA's implementing regulations by failing to provide adequate notice to the public of OSM's NEPA process and decisions for the Navajo Mine and by failing to provide a meaningful opportunity for the public to participate in this process. These allegations, if proved, would excuse Plaintiffs' failure to challenge OSM's NEPA compliance before the

---

[9] Statutorily-imposed exhaustion requirements, such as those the Federal Defendants and Intervenors allege are present in SMCRA, may also be excused in appropriate circumstances. *See, e.g.*, *Woodford*, 548 U.S. at 103-04 (Breyer, J. concurring).

16

agency prior to bringing this action.  *See Ecology Center*, 515 F.2d at 864; *Lands Council*,

198 F. Supp. 2d at 1241; *see also New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*,

565 F.3d 683, 708 (10th Cir. 2009) ("A public comment period is beneficial only to the extent

that the public has meaningful information on which to comment").  As a result, taking these

allegations as true and viewing them in the light most favorable to Plaintiffs, as I must under the

Rule 12(b)(6) standard of review, *see Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226,

1236 (10th Cir. 1999), Plaintiffs' claims challenging OSM's 2004 and 2005 permitting decisions

are not subject to dismissal for failure to state a claim notwithstanding their failure to exhaust

these claims before bringing suit.[10]

III.   Additional Challenges to Plaintiffs' First through Fifth Claims for Relief

The Intervenors also argue Plaintiffs' First through Fifth Claims, which allege different

NEPA violations in connection with OSM's 2004 and 2005 permitting decisions, should each be

dismissed pursuant to Rule 12(b)(6) for failure to state a claim based on the affirmative defenses

of laches and statute of limitations.  Each contention is addressed in turn.

A.     Laches

"An environmental action may be barred by the equitable defense of laches if (1) there

has been unreasonable delay in bringing suit, and (2) the party asserting the defense has been

prejudiced by the delay." *Park County Res. Council, Inc. v. United States Dep't of Agriculture*,

---

[10]     The parties' arguments regarding the merits of Plaintiffs' allegations of noncompliance with NEPA's notice and public participation requirements are premature. Assuming this case proceeds, these contentions will be addressed upon full briefing and consideration of the record in the merits phase of this action.  The Intervenors' suggestion, however, that compliance with SMCRA's notice and public participation provisions is dispositive of this claim is not correct, as even the Federal Defendants acknowledge that NEPA imposes its own set of notice and public participation requirements on OSM.

817 F.2d 609, 617 (10th Cir.1987) (internal quotation omitted), overruled on other grounds by *Village of Los Ranchos de Albuquerque v. Marsh*, 956 F.2d 970 (10th 1992). In environmental cases, this defense "must be invoked sparingly . . . because ordinarily the plaintiff will not be the only victim of alleged environmental damages. A less grudging application of the doctrine might defeat Congress's environmental policy." *Id.*

A complaint is subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense. *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1311 n.3 (10th Cir. 1999); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 349-52 (2nd ed. 1990). Here, the Amended Complaint establishes only that Plaintiffs commenced this action just less than two years after the date of OSM's 2005 permit revision decision and three years after its 2004 permit renewal decision. The "mere lapse of time does not amount to laches. The delay must be unreasonable." *Park County*, 817 F.2d at 618 (internal quotation omitted). A two-year delay in bringing suit is not *per se* unreasonable, *see id.* at 618 (finding nearly two-year delay was not unreasonable under circumstances of case), and the Intervenors point to nothing else in the Amended Complaint that would support a finding of unreasonable delay on a motion to dismiss. In addition, their argument regarding the second element of a laches defense, prejudice, is both unsupported by the Amended Complaint and is so general that it would not satisfy this element in any event. As a result, I deny the Intervenors' motion to dismiss Claims One through Five based on this equitable doctrine.

B.      Statute of Limitations

The Intervenors also argue Plaintiffs' claims regarding OSM's 2004 and 2005 permit decisions are barred by the applicable statute of limitations, which they contend is found in

SMCRA.  SMCRA provides that "a person with an interest" in the OSM's decision on a permit application may request a hearing on the reasons for OSM's final decision within 30 days after the applicant is notified of the decision.  30 U.S.C. § 1264(c).  The statute then requires OSM to issue a written decision on the permit application within 30 days of any hearing, *id.*, and provides 30 day window for judicial review after this post-hearing decision, *id.* § 1276(a)(2).  Under the Intervenors' theory, therefore, Plaintiffs' claims regarding the 2004 and 2005 permitting decisions are barred because they were filed years after the 90-day, SMCRA-derived period for judicial review of OSM's permitting decisions.

As the Intervenors acknowledge, this contention is subject to the Tenth Circuit's decision in *Park County Resource Council, Inc. v. United States Department of Agriculture*, 817 F.2d 609 (10th Cir.1987), overruled on other grounds by *Village of Los Ranchos de Albuquerque v. Marsh*, 956 F.2d 970 (10th 1992).  In *Park County*, the plaintiffs alleged the U.S. Bureau of Land Management had violated NEPA and the Endangered Species Act in issuing an oil and gas lease and approving a private party application to drill on the leased lands.  *Id.* at 612.  The federal defendant argued, and the district court held, that the action was time-barred because it was not filed within the 90-day statute of limitations found in the Mineral Lands Leasing Act ("MLLA"), 30 U.S.C. § 226-2, the statute governing the BLM's decisions on the lease and drilling application.  *Park County*, 817 F.2d at 616.  The Tenth Circuit reversed.  It found that the MLLA statute of limitations applied to challenges to the lease issuance or substantive decisions relating to it, but did not apply to challenges to the agency's decision-making regarding NEPA's separate procedural requirements.  *See id.* at 616.  In so holding, the Tenth Circuit recognized that a NEPA procedural challenge "can indirectly implicate some terms and conditions - even the

validity" of the agency's substantive decision, but agreed nonetheless that an action contesting an agency decision under NEPA was "essentially procedural in character and thus not controlled by the statute of limitations" found in the agency's governing statute. *Id.*

SMCRA's statute of limitations provisions, like the statute of limitations at issue in *Park County*, governs challenges to OSM's substantive decisions and reasoning regarding BHP's permit applications. Under *Park County*, these provisions do not apply to Plaintiffs' claims alleging OSM failed to comply with NEPA's procedural environmental review and public notice and participation requirements. "The mere happenstance that the present NEPA action involves [a surface mining permit] does not remove it from general NEPA principles regarding the timeliness of suit and has no bearing on NEPA enforcement. A contrary holding would be no more than a blind application of a statute of limitations in a context in which its application was not envisioned and would result in illogical and capricious administration of an important environmental statute." *Park County*, 817 F.2d at 617. Accordingly, under *Park City*, Plaintiffs' NEPA claims are not subject to SMCRA's statute of limitation provisions.

The Intervenors urge me to disregard *Park County* and its holding based on the Ninth Circuit's subsequent criticism of *Park County* and the Tenth Circuit's reasoning there. *See Turtle Island Restoration Network v. United States Dep't of Commerce*, 438 F.3d 937, 947 n.9 (9th Cir. 2006). The short answer to this suggestion is that I am not at liberty to ignore binding Tenth Circuit precedent. The *Park County* decision governs here and mandates the conclusion that SMCRA does not set the statute of limitations for Plaintiffs' NEPA claims. *See Park County*, 817 F.2d at 616-17; *Southern Utah Wilderness Alliance v. Bureau of Land Mgmt.*, No. 2:08CV64DAK, 2008 SL 5245492, at *4-6 (D. Utah Dec. 16, 2008).

20

NEPA does not contain a statute of limitations. *Park County*, 817 F.2d at 617. Because NEPA is silent on this question, 28 U.S.C. § 2401, the general statute of limitations for commencing action against the United States, applies. *See, e.g.*, *Greater Yellowstone Coalition v. Tidwell*, 572 F.3d 1115, 1123 n.3 (10th Cir. 2009); *Southern Utah Wilderness Alliance*, 2008 SL 5245492, at *3. This statute requires that a civil action against the United States be commenced within six years after the right of action accrues. 28 U.S.C. § 2401(a). Because Plaintiffs filed this action well within this period, I find their claims challenging OSM's NEPA compliance in connection with their 2004 and 2005 permitting decisions were timely filed.

IV.     Challenges to Plaintiffs' Sixth and Seventh Claims for Relief

In their Seventh Claim for Relief, Plaintiffs allege the Federal Defendants violated NEPA by failing to consider the relocation of the Burnham Road, the Ethnographic Studies for Area IV North and the anticipated Cumulative Hydrologic Impacts Analysis (CHIA) as "connected actions" in its NEPA review of BHP's 2005 application to expand permitted mine operations into Area IV North. NEPA and its implementing regulations define "connected actions" among other things, as actions that are "interdependent parts of a larger action and depend on the larger action for their justification," and requires that they be addressed in the same NEPA review document. 40 C.F.R. § 1508.25(a)(1).

In addition, Plaintiffs allege in their Sixth Claim for Relief that OSM has an obligation to supplement its NEPA review of the 2005 permit revision to address the Burnham Road relocation, the Ethnographic Studies and the CHIA. Plaintiffs base this claim on an agency's obligation under NEPA's implementing regulations to prepare supplements to an EIS or EA if

"[t]here are significant new circumstances or information relevant to environmental concerns and

bearing on the proposed action or its impacts."  40 C.F.R. § 1502.9(c)(1)(ii).

The Defendants/Intervenors initially move to dismiss these two claims on the ground that

they fail to state a claim under the APA because none of the three actions relied upon are "final

agency actions."  The APA, however, provides "agency action includes the whole or a part of an

agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act.*"

5 U.S.C. § 551(13) (emphasis added).  As a result, an agency's failure to prepare a supplemental

environmental assessment or failure to otherwise comply with NEPA constitutes "final agency

action" satisfying this prerequisite to judicial review under the APA.  *See Catron County Bd. of

Com'rs v. U.S. Fish & Wildlife Serv.*, 75 F.3d 1429, 1434 (10th Cir. 1996); *San Juan Citizen's

Alliance v. Babbitt*, 228 F. Supp. 1224, 1229 (D. Colo. 2002); *see also Friends of the Clearwater

v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000) (reaching same result based on APA § 706(1),

which authorizes suit "to compel agency action unlawfully withheld or unreasonably delayed.").

The Federal Defendants and Intervenors also contend dismissal of Plaintiffs' Sixth and

Seventh Claims is warranted because neither are ripe for review.  The ripeness doctrine is

designed to prevent courts from "'entangling themselves in abstract disagreements over

administrative polices, and also to protect the agencies from judicial interference until an

administrative decision has been formalized and its effects felt in a concrete way by the

challenging parties.'"  *Sierra Club v. U.S. Dep't of Energy*, 287 F.3d 1256, 1262-1263 (10th Cir.

2002) (quoting *Abbott Lab. v. Gardner*, 387 U.S. 136, 148-49 (1967)).  To determine if an

agency's decision is ripe for review, I must consider:  (1) whether delayed review would cause

hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with

22

further administrative action; and (3) whether the courts would benefit from further factual

development of the issues presented. *Id.*; *San Juan Citizens' Alliance*, 228 F. Supp. 2d

at 1231-32.

Applying these factors to Plaintiffs' claims regarding the Ethnographic Studies, Burnham

Road relocation and CHIA, I find their Seventh Claim for Relief, alleging that each of these were

"connected actions" that should have been included OSM's NEPA review of the 2005 permit

revision, is ripe.  This claim does not depend on the current status of each of these actions, but

rather looks to their status and relationship to OSM's 2005 NEPA decision-making.  As a result,

there is no benefit to delaying consideration of this claim or reason to withhold court

consideration at this time.

The same is not true with respect to Plaintiffs' Sixth Claim seeking supplementation of

OSM's 2005 NEPA review based on the existence of significant new circumstances or

information bearing on the 2005 permit revision or its impacts.  *See* 40 C.F.R. § 1502.9(c)(1)(ii).

It is undisputed in the pleadings and elsewhere that administrative action with respect to two of

the three actions referenced in this claim, the Burnham Road realignment and CHIA, was on-

going at the time this claim was asserted and remains on-going today.  Until these actions are

completed, judicial intervention will interfere with these proceedings.  Completion of the

administrative process with respect to these actions will also benefit the court, as a more

complete record will allow a more confident assessment of whether either presents "significant

new circumstances or information relevant to environmental concerns" that may trigger an

obligation to prepare a supplemental NEPA review document.  Delay in determining whether

these two on-going actions require supplementation under NEPA will also not cause undue

hardship to Plaintiffs.  Accordingly, Plaintiffs' supplementation claim with respect to these two actions is not ripe and will be dismissed without prejudice for this reason.

I reach a different result with respect to the supplementation claim regarding the Ethnographic Studies.  These studies and the associated mitigation/data recovery plan are differently situated, as Plaintiffs allege without correction that they have been completed.  Based on this circumstance and the parties' current arguments, I find that Plaintiffs' claim that these studies and plan present significant new circumstances or information that compel supplemental review under NEPA is ripe for decision.[11]

V.      Absence of the Navajo Nation

The Tribe is not a party to this action and cannot be joined as a result of sovereign immunity.  *See Manygoats v. Kleppe*, 558 F.2d 556, 558 (10th Cir. 1977).  The Federal Defendants assert that in the Tribe's absence this action must be dismissed because the Tribe is an indispensable party under Rule 19 of the Federal Rules.  To decide this question, I must first consider whether the Tribe is a "required" party under Rule 19(a) which must be joined "if feasible."  Fed. R. Civ. P. 19(a).  If the Tribe is a required party, then I must decide, under Rule 19(b), "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed" in the Tribe's absence.  Fed. R. Civ. P. 19(b).

---

[11]      In considering these challenges, I do not address the Defendants and Intervenors' frequent forays into the merits in arguing for dismissal of these claims.

The Federal Defendants, as the proponent of this Rule 12(b)(7) defense,[12] have "the burden of producing evidence" showing both that the Tribe is a required party and that dismissal is required in its absence. *See Citizen Band Potawatomi Indian Tribe v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994) (proponent has burden of production, which "can be satisfied by providing affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence;" internal quotation omitted). The Federal Defendants, however, produced no evidence with respect to either question in their opening brief, and scant evidence in their reply after Plaintiffs challenged them on this point in opposition to the motion.

What evidence and argument the Federal Defendants have produced is subject to analysis under well-established Tenth Circuit precedent addressing the consequences of absent Indian nations under Rule 19. In *Manygoats v. Kleppe*, 558 F.2d 556 (10th Cir. 1977), the Tenth Circuit considered whether the Navajo Nation was a necessary and indispensable party to an action brought by individual tribal members against the Secretary of Interior to enjoin the Secretary's approval of a uranium exploration and mining agreement between the Tribe and a private company. The basis of the claims was the Secretary's alleged failure to prepare an adequate, NEPA-required EIS before approving or rejecting the mining agreement.

The *Manygoats* court first determined the Tribe was a necessary or required party under Rule 19(a), because the financial and other benefits to the Tribe under the mining agreement gave it sufficient interest in the subject matter of the action to render it a necessary party to the

---

[12]     Rule 12(b)(7) governs motions to dismiss based on the defense of failure to join a party under Rule 19. Fed. R. Civ. P. 12(b)(7). Any suggestion by the Federal Defendants that the indispensability of an absent party implicates the court's subject matter jurisdiction is incorrect. *See Thunder Basin Coal Co. v. Southwestern Pub. Serv. Co.*, 104 F.3d 1205, 1211 n.4 (10th Cir. 1997).

action.[13]  *Id.* at 558.  I find the same here.  Although it is a closer question here than in *Manygoats*, the financial and other benefits the Tribe receives in connection with the Navajo Mine render it a required party to this action challenging the process by which the government authorized continued and expanded operations there.

In light of the Tribe's immunity from suit, I therefore proceed to the Rule 19(b) question of "whether, in equity and good conscience, the action should proceed" in the Tribe's absence. Fed. R. Civ. P. 19(b).  Under the Rule, I must consider the following factors in deciding this question:  the extent to which a judgment rendered in the Tribe's absence might prejudice the Tribe or the existing parties; (2) the extent to which any prejudice could be lessened or avoided; (3) whether judgment rendered in the Tribe's absence would be adequate; and (4) whether Plaintiffs would have an adequate remedy if the action were dismissed for non-joinder.  Fed. R. Civ. P. 19(b); *Thunder Basin Coal Co. v. Southwestern Pub. Serv. Co.*, 104 F.3d 1205, 1211 (10th Cir. 1997).

Considering these Rule 19(b) factors, the Tenth Circuit held in *Manygoats* that the Tribe would not be prejudiced by a judgment rendered in its absence because the requested relief, injunction of the Secretary's approval until he complied with NEPA, did not call for any action by or against the Tribe.  *Manygoats*, 558 F.2d at 558-59.  The court also found that dismissal of

---

[13]     Under Rule 19(a), a party is required if:  (1) complete relief is not possible in its absence among those already parties to the action; or (2) the absent party claims a legally protected interest relating to the subject of the action and in its absence either its interest will be impaired or impeded or the existing parties will be at substantial risk of incurring multiple or otherwise inconsistent obligations because of the absent party's interest. Fed. R. Civ. P. 19(a); *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001).  Rule 19(a) has undergone only stylistic changes since the time of the *Manygoats* decision.  *See* Fed. R. Civ. P. 19(a), Adv. Comm. Notes.

the action for nonjoinder of the Tribe "would produce an anomalous result" because then "[n]o one, except the Tribe, could seek review of [a NEPA-required] environmental impact statement covering significant federal action relating to leases or agreements for development of natural resources on Indian lands." *Id.* at 559.  This result, the court found, was not consistent with the national environmental policy set forth in NEPA.  *Id.*  For this reason and because of the lack of prejudice to the Tribe, the Tenth Circuit held that "[i]n equity and good conscience the case should and can proceed without the presence of the Tribe as a party."  *Id.*

This analysis and holding are both persuasive and binding in this action.  The cases relied upon by the Federal Defendants are distinguishable in that each involved a direct challenge to a tribe's property right or to an agreement to which a tribe was a party.[14]  In this case, as in *Manygoats*, the challenge is to a federal government decision based on the federal decision-maker's alleged non-compliance with NEPA's environmental review and other requirements, and the relief sought is an injunction until such compliance is achieved.[15]  The Tribe plays no role in in OSM's permitting decisions or related NEPA review except that of commentator.  The Federal Defendants' attempt to characterize Plaintiffs' claims in this action as a challenge to the Tribe's lease agreement with BHP or an attempt to enjoin all mining under that lease is not supported by the allegations and relief sought in the Amended Complaint or by other evidence.

---

[14]     At points in their briefs the Federal Defendants appear to argue a *per se* rule that dismissal is required under Rule 19(b) any time a tribe is found to be a required party under Rule 19(a).  The Tenth Circuit, however, has squarely rejected this proposition.  *See Davis v. United States*, 192 F.3d 951, 960-61 (10th Cir. 1999).

[15]     In *Manygoats*, the Tenth Circuit distinguished one of the cases relied upon by the Defendants, *Tewa Tesuque v. Morton*, 498 F.2d 240 (10th Cir. 1974), on just this basis.  *See Manygoats*, 558 F.2d at 558.

Nor can Plaintiffs, or others aside from the Tribe itself, obtain relief for OSM's alleged NEPA violations if this action cannot proceed in the Tribe's absence.  Accordingly, I hold that this action may proceed in equity and good conscience in the Tribe's absence.

VI.     Venue

The final issue to be decided is the parties' dispute regarding the proper venue for this action.  Plaintiffs filed suit in this court on the basis of 28 U.S.C. § 1391(e), which provides, among other things, that a civil action against a federal agency or federal officer acting in his official capacity "may, except as otherwise provided by law," be brought in any judicial district in which the defendant resides and/or a substantial part of the events or omissions giving rise to the claim occurred.  Plaintiffs contend venue is proper here under this provision because the NEPA decisions at issue were made by OSM's Western Regional office located in Denver, Colorado.

Although the Federal Defendants initially admitted venue in this district was proper on this basis, *see* Defs.' First Amended Answer (Doc. 45) ¶ 38, they and the Intervenors now assert this action must be dismissed for improper venue because SMCRA's venue provision governs here and mandates that this action be brought in the judicial district in which the Navajo Mine is located, the District of New Mexico.

The relevant SMCRA provision is 30 U.S.C. § 1276(a)(2), which provides:

Any order or decision issued by the Secretary in a civil penalty proceeding or any other proceeding required to be conducted pursuant to section 554 of Title 5 shall be subject to judicial review on or before 30 days from the date of such order or decision in accordance with subsection (b) of this section in the United States District Court for the district in which the surface coal mining operation is located. . . .

28

By its plain terms, this provision only applies to judicial review of orders or decisions issued in a "civil penalty proceeding" or proceedings conducted pursuant to 5 U.S.C. § 554, which governs agency adjudications.  30 U.S.C. § 1276(a)(2).  As neither of these circumstances are present here, this provision is inapplicable.  Because venue is proper in this district pursuant to the general venue provision stated in 28 U.S.C. § 1391(e), the Federal Defendants' and Intervenors' motions to dismiss for improper venue are denied.  The Federal Defendants' alternative motion to transfer this action to the federal district court in New Mexico premised on application of SMCRA § 1276(a)(2) is also denied.[16]

### Conclusion

For the reasons stated above Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue (Doc. 62), Arizona Public Service Company's Motion to Dismiss (Doc. 10) and Intervenor BHP Navajo Coal Company's Motion to Dismiss (Doc. 61) are GRANTED only with respect to the request for dismissal of the portion of Plaintiffs' Sixth Claim for Relief (duty to supplement under NEPA) that relates to the Burnham Road realignment and Cumulative Hydrologic Impacts Analysis.  This portion of Plaintiffs' Sixth Claim is therefore dismissed without prejudice.  In all other respects, the referenced motions are DENIED.

IT IS SO ORDERED.

Dated this 30th day of September, 2009.

s/John L. Kane
John L. Kane, Senior District Judge
United States District Court

---

[16]     Because no party has requested it or briefed the question, I have not considered whether a discretionary transfer to the federal district court in New Mexico may be appropriate pursuant to 28 U.S.C. § 1404(a).